## UNITED STATES v. ONE FAIRCHILD SEAPLANE et al. (NORTHWEST AIR SERVICE, Inc., Intervener).

### No. 13356.

District Court, W. D. Washington, N. D.
April 16, 1934.

580

Anthony Savage, U. S. Atty., and Tom E. DeWolfe, Asst. U. S. Atty., both of Seattle, Wash., for libelant.

John F. Evich and Dykeman, Monheimer & Griffin, all of Seattle, Wash., for Northwest Air Service, Inc., intervening libelant.

George Olson and W. M. Whitney, both of Seattle, Wash., for Frank Dorbandt, claimant.

Revelle, Simon & Coles, of Seattle, Wash., for Max Herskovits, claimant.

CUSHMAN, District Judge (after stating the facts as above).

The controlling contention of the intervening libelant, as understood by the court, is that if the intervening libelant has a maritime lien for repairs, the value thereof is to be preferred to the penalties assessed by the Treasury Department and the resulting lien. The St. Jago de Cuba, 9 Wheat. 409, 6 L.

Ed. 122; The Thomaston (D. C.) 26 F.(2d) 279.

■ The court has already held, upon the exceptions to the amended intervening libel, that the court has jurisdiction to entertain such intervening libel, whether repairs such as those described would give a maritime lien or not. United States v. One Fairchild Seaplane et al. (D. C.) 4 F. Supp. 249. The question, therefore, is whether, at the time the repairs were made in 1932, the law gave a maritime lien.·

■ The conclusion follows from the scope of the ruling made in Reinhardt v. Newport Flying Service Corporation et al., 232 N. Y. 115, 133 N. E. 371, 18 A. L. R. 1324 (opinion by Judge Cardozo), that at the time of the occurrence of the matters involved in that decision the law gave such a lien. That cause was decided in 1921.

Subsequently, in 1926, Congress, by section 7 (a) of chapter 344, 44 Stat.· 572· (title 49, USCA § 177 (a), in part, provided:

"The navigation and shipping laws of the United States, including any definition of 'vessel' or 'vehicle' found therein and including the rules for the prevention of collisions, shall not be construed to apply to seaplanes or other aircraft or to the navigation of vessels in relation to seaplanes or other aircraft."

Libelant contends that because of the foregoing provision there could be no maritime lien upon a seaplane whether such right had theretofore existed or not.

On account of the conclusion reached it is not necessary to determine the definition of "vessel" or "vehicle," to which reference is made in the quoted provision, nor whether section 3 of the Revised Statutes (title 1 USCA § 3) is or is not a shipping law.

It may be assumed that section 30, subsection P, c. 250, 41 Stat. 1005 (title 46, USCA § 971), giving a maritime lien for repairs to a vessel, is, as ordinarily understood, a shipping law, yet, it does not necessarily follow that Congress intended by the quoted provision to deny a maritime lien in such a case as that here presented by such a general reference to "shipping laws" as that made in section 177 (a), supra. There are many laws and parts of laws that are ordinarily referred to as shipping laws, as shown by the two volumes of the United States Code Annotated, upon the subject of "shipping." Title 46.

Under such circumstances, to arrive at the intent of Congress in the enactment of section 177 (a) of title 49, supra, a resort to other rules of construction may furnish a safer guide to the intent of Congress than the full reach or scope of the naked words used. It is proper therefore to quote the statute more at length. In doing so the court emphasizes that portion of the statute already quoted and other included words bearing upon the intent of Congress:

"§ 176. *Foreign Aircraft.*

"(a) (\*Sovereignty of airspace declared; navigation of *foreign military aircraft.)* The Congress hereby declares that the Government of the United States has, to the exclusion of all *foreign nations,* complete sovereignty of the airspace over the lands and waters of the United States, including the Canal Zone. Aircraft a part of the armed forces of any *foreign nation* shall not be navigated in the United States, including the Canal Zone, except in accordance with an authorization granted by the Secretary of State.

"(b) (\*Navigation of *foreign civil aircraft;* authorization; applicability of regulations.) *Foreign aircraft* not a part of the armed forces of the *foreign nation* shall be navigated in the United States only if authorized as hereinafter in this section provided, and if so authorized, such aircraft and airmen serving in connection therewith, shall be subject to the requirements of section 173 of this chapter, unless exempt under subdivision (c) of this section.

"(c). (\*Navigation of *foreign civil aircraft;* condition of authorization; exemption from regulations; engagement in air commerce.) If a *foreign nation* grants a similar privilege in respect of aircraft of the United States, and/or airmen serving in connection therewith, the Secretary of Commerce may authorize aircraft registered under the law of the *foreign nation* and not a part of the armed forces thereof to be navigated in the United States, and may by regulation exempt such aircraft, and/or airmen serving in connection therewith, from the requirements of section 173 of this chapter, *other than the air traffic rules; but no foreign aircraft shall engage in interstate or intrastate air commerce.* (May 20, 1926, c. 344, § 6, 44 Stat. 572.)

"§ 177. Application of Existing Laws Relating to *Foreign Commerce.*

"(a) (\*Application of navigation and shipping laws to aircraft.) The navigation and shipping laws of the United States, including any definition of 'vessel' or 'vehicle' found therein and including the rules for the

582

prevention of collisions, shall not be construed to apply to seaplanes or other aircraft or to the navigation of vessels in relation to seaplanes or other aircraft.

"(b) (*Designation of *ports of entry;* detail of officers; application of *customs and public health laws.)* The Secretary of the Treasury is authorized to (1) designate places in the United States as *ports of entry* for civil aircraft *arriving in the United States* from any place *outside thereof* and for merchandise carried on such aircraft, (2) detail to *ports of entry* for civil aircraft such officers and employees of the *customs service* as he may deem necessary, and to confer or impose upon any officer or employee of the United States stationed at any such *port of entry* (with the consent of the head of the Government department or other independent establishment under whose jurisdiction the officer or employee is serving) any of the powers, privileges, or duties conferred or imposed upon officers or employees of the *customs service,* 'and (3) by regulation to provide for the application to civil air navigation of the laws and regulations relating to the administration of the *customs and public health laws* to such extent and upon such conditions as he deems necessary.

"(c) (*Application of laws relating to *entry and clearance of vessels.)* The Secretary of Commerce is authorized by regulation to provide for the application to civil aircraft of the laws and regulations relating to the *entry and clearance of vessels* to such extent and upon such conditions as he deems necessary.

"(d) (*Designation of *ports of entry for aliens;* detail of officers; application of laws *relating to immigration.)* The Secretary of Labor is authorized to (1) designate any of the *ports of entry* for civil aircraft as *ports of entry for aliens arriving by aircraft,* (2) detail to such *ports of entry* such officers and employees of the *immigration service* as· he may deem necessary, and to confer or impose upon any employee of the United States stationed at such *port of entry* (with the consent of the head of the Government department or other independent establishment under whose jurisdiction the officer or employee is serving) any of the powers, privileges, or duties conferred or imposed upon officers or employees of the *immigration service,* and (3) by regulation to provide for the application to civil air navigation of the laws and regulations relating to the administration *of the immigration laws* to such extent and upon such conditions as he deems necessary. (May 20, 1926, c.

344, § 7, 44 Stat. 572.)" (Italics by the court.) (The headings of the foregoing subsections which are included in parentheses and identified by a * are not used in the act but appear in the United States Code Annotated.)

Giving due weight to the subject-matter particularly under consideration in the enactment of the foregoing sections, that is, foreign aircraft and foreign commerce, and to the associated words of the statute, in accordance with the maxim "noscitur a sociis" as well as the ejusdem generis rule of statutory construction—for in the statute, section 177 (a), the general words "shipping laws" follow the particular words of section 177 "foreign commerce," and as the statute giving the maritime lien for repairs (title 46, USCA § 971) is not restricted to foreign commerce or foreign watercraft, it follows that section 177 (a) of title 49, USCA, does not deny a maritime lien to one who repairs a seaplane under the circumstances here· shown. Reinhardt v. Newport Flying Service Corp., 232 N. Y. 115, 133 N. E. 371, 18 A. L. R. 1324.

Decree will be for the forfeiture and sale of the respondent seaplane as prayed in the libel and amended intervening libel. The intervening libelant will be decreed a preference upon distribution, of the amount claimed for the repairs made.

Any findings, conclusions, and decree will be settled upon notice.

The clerk will notify the parties of this decision.